**Louis F. KRODEL, Ed.D, Plaintiff,**

v.

**BAYER CORPORATION, et al., Defendants.**

**No. CIV.A. 03–11109–NMG.**

United States District Court, D. Massachusetts.

Nov. 19, 2004.

Peter Francis Carr, II, Eckert Seamans Cherin & Mellott, LLC, Boston, MA, for Bayer Corp., Defendant.

Erik J. Frick, Eckert Seamans Cherin & Mellott, LLC, Boston, MA, for Bayer Corporation, Defendant.

Anne L. Josephson, Kotin, Crabtree & Strong, Boston, MA, for Louis F. Krodel, Plaintiff.

Marie F. Mercier, Kotin, Crabtree & Strong, Boston, MA, for Louis F. Krodel, Plaintiff.

## MEMORANDUM & ORDER

GORTON, District Judge.

In the present dispute, Plaintiff, Dr. Louis F. Krodel ("Dr.Krodel"), alleges that Defendant, Bayer Corporation ("Bayer"), acting in its role as Plan Administrator of the Bayer Corporation Welfare Benefits Plan ("The Plan"), wrongfully denied him certain health benefits to which he is entitled. Plaintiff and Defendants have filed cross motions for summary judgment.

### I. *Factual Background*

The following facts are taken from Plaintiff's Statement of Undisputed Material Facts (Docket No. 31), Defendants' Response to Plaintiff's Statement of Undisputed Material Facts (Docket No. 37), Defendants' Statement of Undisputed Material Facts (Docket No. 38) and Plaintiff's Response to Defendants' Statement of Undisputed Material Facts (Docket No. 43).

Bayer is the Plan Administrator of the Bayer Corporation Welfare Benefits Plan which provides an array of benefits to employees. Bayer has delegated responsibility for claim administration to the Connecticut General Life Insurance Company ("CIGNA"). CIGNA receives claims and makes the initial determination as to eligibility for coverage.

Under the Plan, an expense is covered only if it is a "medical necessity," as determined by Bayer in accordance with a defi-

nition contained in the "Summary Plan Description". The Summary Plan Description is a general document that expressly incorporates by reference CIGNA's more detailed Standard Operating Procedures ("SOP").

Dr. Krodel is eligible to participate in the Plan because he is the spouse of a Bayer employee. In 1979, Dr. Krodel was struck by a car, requiring amputation of his left leg above the knee. In 1999, Dr. Krodel received a prosthesis manufactured by Next Step Orthotics & Prosthetics, Inc. ("Next Step") and was covered under the Plan.

In November, 2001, Dr. Krodel returned to Next Step for a consultation concerning his prosthesis. Dr. Krodel contends that he had lost 30 pounds which caused the shape of his residual limb to change such that his prosthesis no longer fit properly. He complained that the knee sometimes "buckled," causing him to lose his balance and fall.

In April, 2002, Dr. Krodel's physician, Dr. Segre, wrote him a prescription for a new, computer-controlled prosthesis called the "C–Leg" that costs $41,500. In a letter dated May 29, 2002, Next Step sought pre-approval from Bayer for coverage of the C–Leg. The letter enclosed a prescription for the device and a three-page letter from Dr. Segre detailing its medical necessity.

On June 4, 2002, CIGNA denied Dr. Krodel's request for coverage of a "below knee prosthesis" and reasoned that it was a "biomechanical device" which was not covered under the Plan. Next Step promptly appealed that denial on Dr. Krodel's behalf, pointing out that the request had been for an "above knee prosthesis". On August 20, 2002, CIGNA again denied

coverage for the prosthesis (this time correctly identifying it as an above knee model) on the grounds that biomechanical devices were not covered. Neither denial contained any reference to a determination with respect to the medical necessity of the device.

On August 20, 2002, Dr. Krodel appealed the denial to Bayer's ERISA Review Committee.[1] Bayer acquired the documents that it needed in order to consider the appeal by sending a letter to CIGNA requesting that:

> your response should include details of Ms. Krodel's communications to Cigna. In addition please only provide the pertinent back-up information that supports your summary and decision.

In response, CIGNA forwarded to Bayer a case summary which included 13 pages of documents.

By letter dated October 8, 2002, Bayer denied the appeal on the grounds that 1) the requested device was a biomechanical device which was not covered and 2) "a prosthesis of this type is not considered to be medically necessary because the existing prosthesis addresses [Dr. Krodel's] medical condition." Bayer did not, however, inform Dr. Krodel of any possible entitlement to a different kind of a prosthesis.

On November 19, 2002, Dr. Krodel e-mailed Susan Murphy, a Bayer employee, to request copies of the documents governing the Plan. Bayer responded by providing a copy of the Summary Plan Description. On March 18, 2003, Dr. Krodel requested copies of all documents "relevant to the claim" and was subsequently provided with 13 pages of documents that Bayer relied on in denying his appeal. However, Dr. Krodel suspected that he had not received all relevant documents

---

1. Although, at times, Dr. Krodel's wife proceeded on Dr. Krodel's behalf, for the sake of brevity, all actions taken by either spouse will be referred to as those of "Dr. Krodel".

because neither he nor his counsel could determine, based upon the documentation in hand, the source of certain language that was quoted by Bayer in its letter denying the requested coverage.

Thus, Dr. Krodel alleges that, prior to filing suit, he did not receive all of the information that he needed to argue effectively in support of his claim for coverage. Specifically, before litigation began, Dr. Krodel was not provided with a copy of the SOP. Bayer explains that the SOP was not sent to Dr. Krodel sooner because CIGNA had refused to release it.

On June 6, 2003, Dr. Krodel filed the present action. On January 23, 2004, Bayer produced documents, including the SOP, that had been internally produced by CIGNA. Some of those documents suggest that, during 2002 and after Bayer denied coverage to Dr. Krodel, CIGNA had re-evaluated his claim. The parties vigorously dispute the reason for that re-evaluation: Bayer asserts that it was unilaterally undertaken by CIGNA while Dr. Krodel suggests that Bayer must have ordered it. The CIGNA documents call into question whether the subject prosthesis was, in fact, an excluded biomechanical device and whether a new prosthesis should have been considered a medical necessity for Dr. Krodel.

All parties now move for summary judgment. Dr. Krodel contends that the consideration of his claim was so impaired by substantive and procedural deficiencies that the denial of coverage constituted an abuse of discretion. Accordingly, Dr. Krodel requests that this Court order that he is entitled to the C–Leg under the Plan and to monetary penalties for each day documents relevant to his claim were withheld.

Defendants argue that, to the contrary, the Court must confine its review to the information that Bayer itself considered at the time of the denial. In the alternative, Bayer suggests that, if procedural infirmities were present, the proper remedy would be to remand the case to the Plan Administrator for re-consideration of the claim by Bayer in light of the new information generated by CIGNA and highlighted by Dr. Krodel.

## II. *Legal Analysis*

### A. Standard of Review

#### 1. *Judicial Review of Action by an ERISA Board*

A district court reviews ERISA claims arising under 29 U.S.C. § 1132 *de novo* unless the benefits plan in question confers discretionary authority upon the administrator to "determine eligibility for benefits or to construe the terms of the plan". *Bekiroglu v. Paul Revere Life Ins. Co.*, 223 F.Supp.2d 361, 366 (D.Mass. 2002), *aff'd* 75 Fed.Appx. 8 (1st Cir.2003). If the plan clearly gives such authority to an administrator (as this one does), then the administrator's decisions are subject to deference and will only be reversed if they were "arbitrary, capricious or an abuse of discretion". *Diaz v. Seafarers Int'l Union*, 13 F.3d 454, 456 (1st Cir. 1994). Under that standard, a "decision will be upheld if it was within [the plan administrator's] authority, reasoned, and supported by substantial evidence in the record." *Doyle v. Paul Revere Life Ins. Co.*, 144 F.3d 181, 184 (1st Cir.1998)(internal citations omitted).

#### 2. *Summary Judgment Standard*

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991)(quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)). The

burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

## B. Bayer's Denial of Dr. Krodel's Claim

■ Plaintiff contends that a reversal of Bayer's decision is required on both procedural and substantive grounds. However, given the procedural deficiencies discussed in the numbered paragraphs below, a remand to the Plan Administrator for reconsideration is appropriate and this Court need not, at this stage, consider Dr. Krodel's substantive challenges.

1. Bayer violated ERISA by failing to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2); 29 C.F.R. § 2560.503–1(h)(1). Under that provision, a plan administrator is required to provide a review that "does not afford deference to the initial adverse benefit determination". 29 C.F.R. § 2560.503–1(h)(3)(ii).

■ In preparing to consider Dr. Krodel's appeal, however, Bayer requested from CIGNA "only pertinent back-up information that *supports* your summary and decision" (emphasis added). While, as Bayer points out, it also requested the details of communications between Dr. Krodel and CIGNA, the specific request, nonetheless, evidences Bayer's predisposition to affirm the judgment and reasoning of CIGNA. Indeed, Bayer did not seek or review the actual governing documentation that defined "biomechanical device," but instead relied on a summary from CIGNA. Common sense dictates that, where a non-deferential review is required, it is insufficient for the plan administrator to rely solely on a summary document prepared by the party to which it may not defer. Here, the evidence shows that Bayer, rather than conducting a non-deferential review, simply "rubber-stamped" the decision of CIGNA.

■ 2. Bayer also violated 29 C.F.R. § 2560.503–1(h)(3)(iii) which provides that:

in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, including determinations with regard to whether a particular treatment, drug, or other item is ... medically necessary or appropriate, the appropriate named fiduciary shall *consult with a health care*

*professional* who has appropriate training and experience in the field of medicine involved in the medical judgment. *Id.* § 2560.503–1(h)(3)(iii) (emphasis added).

As far as the record shows, Defendants failed to seek any medical advice in making their determination with respect to Dr. Krodel's claim. Thus, a clear violation of the regulation occurred.

■ 3. Upon notifying Dr. Krodel of the denial of his claim, Bayer violated 29 C.F.R. § 2560.503–1(g)(1)(v)(A) which provides that, if a specific internal rule is relied on in making a determination, that rule must be provided or a statement made that it will be made available to the claimant free of charge. *Id.* § 2560.503–1(g)(1)(v)(A). Bayer relied, in part, on an internal definition of the term "biomechanical device" to deny Dr. Krodel's claim. However, the letter of October 8, 2002, denying his claim, neither identifies that rule nor offers to provide a copy of it. Dr. Krodel was particularly prejudiced by that violation because it deprived him of the opportunity to verify or dispute whether his claim was, in fact, for an excluded biomechanical device.

■ 4. Bayer also violated 29 C.F.R. § 2560.503–1(g)(1)(v)(B), which states that: if the adverse benefit determination is based on a medical necessity . . . either an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances, or a statement that such explanation will be provided free of charge upon request [will be provided to the claimant]. *Id.* § 2560.503–1(g)(1)(v)(B).

Bayer purported to base its decision on a lack of medical necessity but its October 8, 2002 letter to Dr. Krodel provided no reference to any scientific or clinical judgment nor did it apply the terms of the Plan

to his medical circumstances. Dr. Krodel was left with an incomplete explanation of the reasons for the denial of his claim, as demonstrated by his subsequent (repeated) requests for information.

■ 5. Finally, Bayer violated its own internal rule by failing to inform Dr. Krodel that he might qualify for a different prosthesis. In its memoranda, Bayer asserts that, to the extent that the evidence demonstrates that Dr. Krodel has a medical necessity for some prescription, it is the medical necessity for a new prosthesis, not the specific prosthesis that Dr. Krodel requested. Notwithstanding that argument, at the time of the appeal, Bayer did not inform Dr. Krodel of any such potential entitlement, despite Bayer's own rule mandating such disclosure in that situation. Dr. Krodel was entitled to presume that Bayer would comply with its own rules and he was, therefore, prejudiced by its failure to do so.

Bayer's procedurally-inadequate review process has resulted in an incomplete record devoid of facts that the Court would need to conduct a substantive review of Dr. Krodel's claim. For example, Bayer did not obtain a medical consultation concerning the medical necessity of the prosthesis as prescribed by ERISA nor adequately explain its rationale for denying coverage to Dr. Krodel by requisite reference to the rules. Finally, it appears that CIGNA re-evaluated Dr. Krodel's claim and found strong evidence that Bayer's denial of coverage was erroneous. That information has yet to be considered by Bayer as the Plan Administrator.

■ If a record is lacking as a result of a procedurally-inadequate, out-of-court review process, a district court may remand the case for reconsideration by the administrator. *Recupero v. New England Telephone and Telegraph Co.*, 118 F.3d 820,

830 (1st Cir.1997). As the court stated in *Recupero:*

> If ... the trial judge determines that, by reason of departures from fair process, the challenged out-of-court decision cannot be affirmed, one obvious possibility is an order of remand for reconsideration by the committee ... that made the procedurally flawed out-of-court decision. *Id.*

Accordingly, this case will be remanded in order that the Plan Administrator may provide the "full and fair" consideration to which Dr. Krodel is entitled.

Remand will also allow Bayer to consider the findings of CIGNA that support Dr. Krodel's case, including the evidence that his claim is not for an excluded biomechanical device and that CIGNA's own doctors believe in the medical necessity of the device. Absent a remand, those findings, which were made after the appeal was decided, would never be taken into account.

### C. Additional Considerations on Remand

In light of Bayer's past violations of ERISA and to ensure that a fair review procedure is now constructed, Bayer will consider, in addition to the deficiencies discussed above, the following:

First, Bayer argues vigorously that the Court's review must be based solely on the record that was before Bayer when the appeal was decided. Indeed, there is a "strong presumption that the record on review is limited to the record before the administrator." *Lopes v. Metropolitan Life Ins. Co.,* 332 F.3d 1, 5 (1st Cir.2003). *See also Kolling v. Am. Power Conversion Corp.,* 347 F.3d 11, 14 n. 6 (1st Cir.2003); *Liston v. Unum Corp. Officer Severance Plan,* 330 F.3d 19, 23 (1st Cir. 2003)("The ordinary rule is that review for arbitrariness is on the record made before

the entity being reviewed."). As the First Circuit Court of Appeals asks, rhetorically, "how could an administrator act unreasonably by ignoring information never presented to it?" *Liston,* 330 F.3d at 23.

Notwithstanding that presumption, precedent does not require this Court to indulge in the irony that would result if an administrator could limit judicial review of unfavorable information simply by choosing not to include it in the record at the time of the appeal, as Plaintiff alleges happened here. Indeed, the Court of Appeals has stated that "[r]eview of the administrative record for reasonableness logically implies review of the record *available* to the plan administrator." *Id.* (emphasis added).

Thus, on remand, Bayer will consider *all* information that is relevant to Dr. Krodel's claim, including 1) the actual language of any exclusion from coverage, definition or other relevant provision of a governing document and 2) any information that CIGNA has generated in its re-assessment of Dr. Krodel's claim. Moreover, Dr. Krodel will be given an opportunity to designate relevant information to be considered by Bayer. Following remand, if reconsideration by this Court becomes necessary, its review will be similar in scope.

Second, Plaintiff contends that he is entitled to statutory penalties of approximately $40,000 (i.e. up to $100 per day for 400 days) based upon Defendants' alleged failure to provide information to Dr. Krodel as required by ERISA. *See* 29 U.S.C. § 1132(c). Specifically, Dr. Krodel alleges that the non-provision of the SOP constituted such a failure. His argument has merit because the SOP contained the underlying basis for his exclusion from coverage. Indeed, the documents that were initially provided to Dr. Krodel in response to his requests contained language explicit-

ly dependent upon the SOP. Thus, Dr. Krodel could not reasonably be expected to understand Bayer's decision, let alone fashion his appeal, without having access to it.

■ Defendants contend that they could not have provided the SOP sooner because CIGNA refused to release it. To accept such an excuse, however, would permit administrators to nullify their disclosure responsibilities through delegation and that is not the preferred interpretation of the statute. *Weaver v. Phoenix Home Life Mutual Ins. Co., Inc.*, 990 F.2d 154, 158 (4th Cir.1993)("administrators may not evade their responsibility under ERISA by contracting to third parties"). While the fact that CIGNA stood as a barrier to production of the SOP suggests a lack of culpability on the part of Bayer, it does not suffice as an excuse for non-compliance with ERISA.

At this juncture, however, this Court will defer its decision on whether the non-production of the SOP, or any of the other information that Dr. Krodel alleges has not been produced, gives rise to a statutory penalty. On remand, however, Bayer will provide Dr. Krodel with reasonable access to *all* documents that are relevant to his claim, including the SOP and, if consideration by this Court of statutory penalties becomes necessary in the future, it will look with considerable displeasure upon any evasion by Defendants of their responsibilities under ERISA.

### ORDER

In accordance with the foregoing, this case (03–cv–11109–NMG) is hereby **REMANDED** to the Plan Administrator for reconsideration of Plaintiff's claim consistent with this Memorandum and Order. The Plan Administrator will complete its reconsideration and notify this Court of its decision within 90 days of the date of this Order. The motions for summary judgment of Plaintiff and Defendants (Docket Nos. 28 and 35) are DENIED without prejudice.

So ordered.